## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MAXWELL O/B/O GAIL A. CLEMENTS-MAXWELL, DECEASED, | CASE NO. 1:13-cv-02410-CCC-GBC |
| | (CHIEF JUDGE CONNER) |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| | Docs. 1, 6, 7, 11, 12, 13 |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Gail A. Clements-Maxwell for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). Plaintiff challenges the ALJ's assessment of her social functioning, specifically her ability to interact with the public, and her physical impairments. However, the ALJ specifically found that Plaintiff had only mild difficulties in social functioning, and this finding is supported by substantial evidence. With regard to Plaintiff's physical impairments, although she sought treatment for anxiety, depression, and substance abuse, she did not seek any

treatment for her allegedly disabling physical impairments from 2007 until May of 2012. Plaintiff did not complain of neck, back, or coccyx pain during this time. As a result, the ALJ concluded that, prior to August of 2012, these impairments would not cause any significant functional work-related limitations. The ALJ concluded that Plaintiff's limiting physical impairments were not expected to last more than twelve months after August of 2012, because Plaintiff underwent spinal surgery in December of 2012 from which she was expected to recover. Substantial evidence supports this conclusion, including a medical source opinion from Plaintiff's treating provider that her temporary disability would not last twelve months or more. Substantial evidence supports the ALJ's assessment of Plaintiff's social functioning and physical impairments. For the foregoing reasons, the Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.     Procedural Background

On December 8, 2010, Plaintiff filed an application for DIB and SSI. (Tr. 197-211). On July 12, 2011, the Bureau of Disability Determination denied these applications (Tr. 71-106), and Plaintiff filed a request for a hearing on August 16, 2011.  (Tr. 110-11). On December 3, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert appeared and testified. (Tr. 38-70).  On February 9, 2013 the ALJ found that Plaintiff was

not disabled and not entitled to benefits. (Tr. 10-37). On March 14, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 9), which the Appeals Council denied on July 25, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-8).

On September 18, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 11, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On February 21, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 11). On March 27, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On April 11, 2014, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 13). On November 5, 2014, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.      Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v.*

*Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds

that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").    20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V. Relevant Facts in the Record

Plaintiff was born on August 14, 1952, and was classified by the regulations as a younger individual through the date last insured. (Tr. 244). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and has past relevant work as a deli slider. (Tr. 30).

Plaintiff submitted a Function Report in support of her application. (Tr. 274). She indicated that she had no problem with her personal care, and that she "used to take care of [her] husband but haven't lately because [she] just spent the last 4 years providing care for my mother who passed at my home where she lived on Dec. 25, 2009." (Tr. 274). She indicated that was preparing full meals or baking everyday due to overeating, and that she had gained forty pounds in less than four months. (Tr. 275). She indicated that she performs household chores, drives, and shops in stores. (Tr. 276). She reported that she had lost interest in physical activities because of leg, neck, and back injuries. (Tr. 277). She indicated that she had problems lifting, squatting, bending, standing, walking, sitting, and kneeling, and that she can only walk one block before needing to rest. (Tr. 278). She indicated that she gets along well with authority figures and had a "fair" ability to handle stress and changes in her routine. (Tr. 279). She reported that she uses a cane periodically for balance due to her neck and back injuries. (Tr. 279).

Plaintiff challenges the ALJ's assessment of her coccyx, neck, and back pain. Plaintiff received some treatment for musculoskeletal pain in 2007 and

earlier, but the record contains no evidence that Plaintiff ever complained of coccyx, neck, or back pain or sought treatment for coccyx, neck or back pain between 2007 and May of 2012. The medical records that were before the ALJ constitute Exhibits 1F to 37F in the administrative record. Exhibits 1F, 17F, 20F, 21F, 23F, and 27F are from 2007 or earlier. (Tr. 334-454, 617-631, 670-87, 822-36, 891). Exhibits 2F, 3F, 5F, 10F, 11F, 18F, 19F, 24F, and 28F contain evidence of mental impairments only. (Tr. 455-477, 495-96, 528-33, 632-669, 837-38, 892-905).[1] Exhibits 15F and 26F are duplicate records from the Case Management Unit of Dauphin County, a social services organization that helped coordinate mental health care for Plaintiff. (Tr. 578-614, 854-90). Exhibits 6F through 9F are consultative examinations or disability development worksheets. (Tr. 496-527). Exhibits 12F, 13F, 16F, 22F, 29F through 33F and 35F through 37F are from after Plaintiff's fall in August of 2012 described below. (Tr. 534-562, 615-16, 688-821, 906-1009, 1015-1022).

---

[1] Exhibit 2F (Tr. 455-475) is evidence from Plaintiff's hospitalization for alcohol intoxication (Tr. 455-75) when she denied physical pain and discomfort (Tr. 458), and Exhibit 3F is evidence of Plaintiff's first inpatient rehabilitation (Tr. 476-77) when her only physical impairment was "hyperlipidemia" (Tr. 477). Exhibit 5F is a mental health treatment record from Mazzitti and Sullivan Counseling Services.(Tr. 495-96). Exhibits 10F and 28F are records of Plaintiff's inpatient hospitalization at Pennsylvania Psychiatric Institute. (Tr. 528-31, 892-905). Exhibit 11F and 24F are duplicate treatment notes from Dr. Wheeler that address only alcoholism, depression, and loss of memory. (Tr. 532-33, 837-38). Exhibits 18F and 19F are evidence from Plaintiff's inpatient psychiatric and detoxification stay at Community General Osteopathic Hospital. (Tr. 632-669).

Exhibit 4F is evidence from Dr. Glenn Wheeler, M.D., that included records from May 15, 2006 to January 7, 2011. (Tr. 478-93). The only treatment Plaintiff received after June of 2007 was a followed-up for an ear ache in May of 2009, an X-ray for knee pain in July of 2009, an overall check-up in April of 2010 when Plaintiff discussed her tobacco use and elbow pain, a medication check-up for psychotropic medications in July of 2010, a follow-up for alcohol and depression in November of 2010, and an evaluation for moles on her neck in January of 2011. (Tr. 482-494). Plaintiff never mentioned back or neck pain at those visits. *Id*. Exhibits 14F and 25F are duplicate records that show she began reporting neck and arm pain on May 30, 2012. (Tr. 563-577, 839-53).

On June 23, 2011, Plaintiff had a physical consultative examination with Dr. Brian D'Eramo, D.O. (Tr. 510). One page is missing from this report. (Tr. 510). Plaintiff indicated that her physical impairments were derived from injuries suffered prior to 2008. (Tr. 507-08).   Dr. D'Eramo observed limited range of motion. (Tr. 511). Dr D'Eramo opined, *inter alia*, that Plaintiff could only lift and carry three to five pounds frequently and ten pounds occasionally. (Tr. 513). He opined that Plaintiff could only stand or walk for less than one hour out of an eight hour workday. (Tr. 513). He opined that she was limited in pushing and pulling in her upper extremities, and was specifically limited in reaching. (Tr. 513, 514).

On July 8, 2011, state agency physician Dr. Michael Brown, D.O, reviewed Plaintiff's file and completed an RFC assessment. (Tr. 76). Dr. Brown opined that Plaintiff's physical impairments were not severe. (Tr. 76). He explained that she related her neck and shoulder pain, headaches, tailbone pain, right leg and foot pain, and low back pain to "injuries from 2008 and earlier. Yet, she worked until 2010. She stopped work apparently due to alcohol intoxication…and detox." (Tr. 76). He continued, "she had no recent documented treatment for any of the above physical complaints in 2011 and currently takes no medications for any of her physical complaints," citing Dr. D'Eramo's consultative examination. (Tr. 76). He further noted that she "did not provide evidence of treatment for physical impairments in 2011 or 2010 other than her alcoholism." (Tr. 76). He cited to Plaintiff's primary care office visit in January of 2011, which "showed no edema and no complaints." (Tr. 76). He opined that Plaintiff was "not credible for her complaints or impairments." (Tr. 76). He rejected Dr. D'Eramo's opinion because "the CE exam 6/2011 noted 'her exam does not fit most of her complaints.' Indeed, her exam was unremarkable with normal abdomen, no focal motor or sensory deficits, and functional range of motion everywhere." (Tr. 76). He opined that Dr. D'Eramo's opinion "was not supported by exam findings or the record and was inconsistent." (Tr. 76).

Plaintiff began reporting neck and arm pain on May 30, 2012. (Tr. 563-577, 839-53). Dr. Nse Akpe, M.D., her primary care physician, indicated in June of 2012 that Plaintiff's first period of temporary disability began on May 30, 2012. (Tr. 577). No specific functional limitations were assessed, and the form indicated that Plaintiff's ability to return to normal activities was "to be determined by orthopedist and psychiatrist." (Tr. 577).

On August 14, 2012, Plaintiff exacerbated these symptoms when she fell while intoxicated. (Tr. 944-950). Plaintiff presented to the emergency room, and a CT scan indicated she had fractured her cervical spine. (Tr. 968). On August 15, 2012, Dr. Matthew Kelly, M.D., performed a surgery consultation. (Tr. 962). He recommended a hard cervical collar at all times, planned to obtain an MRI, and recommended "pain control, physical therapy and appropriate evaluation for her psychiatric/alcohol problems." (Tr. 962). She was discharged from the hospital on August 16, 2012. (Tr. 944-46).

On November 20, 2012, a CT scan indicated that Plaintiff's cervical spine continued to demonstrate fractures at C1, C6, and C7. (Tr. 1017-1018). On December 6, 2012, an MRI of Plaintiff's cervical spine indicated the continued presence of fractures with "no significant changes compared with the prior study." (Tr. 1025-26). Plaintiff's surgery was scheduled for December 17, 2012. (Tr. 1022). There are no subsequent medical records that were before the ALJ.

On December 3, 2012, Plaintiff appeared and testified at a hearing before an ALJ. (Tr. 39). Plaintiff testified that, at the time she fell down the stairs in August of 2012, she was working up to seven and a half hours a day in a temporary position at Staples. (Tr. 47-48). She testified that she needed to bring a cervical pillow, use a box to prop up her leg, and sit and stand throughout the shift. (Tr. 48). She testified that her neck pain and cane use began in 1994. (Tr. 50-51). She testified that, after 1997, she would self-medicate with alcohol because her neck pain prevented her from sleeping. (Tr. 51-52). She testified that, at her last job, she "didn't have any problems interacting with any employees or coworkers." (Tr. 55). She explained that her coworkers would "hear [her] talking to like a customer and I would sort of just start losing my focus, they were kind enough to tap me and they would give me indicators that, 'you're talking. Don't say that.'" (Tr. 55). She testified that she had been able to provide "24 hour care" to her mother from 2006 to 2009, and that the only impairments that interfered with that were "sadness and grief and anger." (Tr. 57). Plaintiff testified that she would be unable to perform work as a deli slicer. (Tr. 58). She testified to problems with her elbows, problems standing, and using a back brace and shoe inserts. (Tr. 58-59). She testified that, prior to fracturing her neck, she was only taking over-the-counter medication for pain. (Tr. 60).

A VE also appeared and testified. (Tr. 63). The VE testified that, given the RFC assessed by the ALJ described below, Plaintiff could perform her past relevant work as a deli slicer. (Tr. 64). The VE testified that if Plaintiff required a sit/stand option, she would not be able to work as a deli slicer. (Tr. 65). The VE testified that, if Dr. D'Eramo's opinion was credited, Plaintiff could not perform any work. (Tr. 66).

On February 8, 2013, the ALJ issued the decision. (Tr. 31).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity in the period since September 6, 2010, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff's alcohol dependence, affective disorder, and anxiety related disorder were medically determinable and severe through the date last insured. (Tr. 16-19). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 19-23). The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but limited to unskilled work, defined as work that can be learned within thirty days, is routine and repetitive, not requiring precise attention to detail, and not requiring independent decision making. (Tr. 23). At step four, the ALJ found that Plaintiff could perform her past work as a deli slicer, and was not entitled to benefits. (Tr. 30-31).

## VI.    Plaintiff Allegations of Error

### A. The ALJ's evaluation of Plaintiff's social functioning

Plaintiff asserts that the ALJ erred in failing to explain why he rejected an opinion that Plaintiff was moderately limited in her ability to interact with the public, and that this error was not harmless because Plaintiff's past work required interacting with the public. (Pl. Brief at 10-14).

The ALJ sufficiently explained his findings with regard to Plaintiff's social functioning. The ALJ did not specifically address the moderate limitation in interacting with the public assessed by the state agency consultant. However, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Comm'r Soc Sec*, 94 F. App'x 130, 133 (3d Cir. 2004). As long as the Court can meaningfully review the ALJ's decision, the ALJ's explanation will be satisfactory. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (A Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.")

Here, the ALJ addressed Plaintiff's social functioning under the Listing Assessment. The ALJ found that Plaintiff had only mild limitations in social functioning because:

> [A]lthough the claimant alleges complete social isolation and difficulty getting along with others generally, she is admittedly able to leave her home unaccompanied as needed, gets along well with authority figures, and reports no actual difficulty getting along with freidns, family or neighbors but rather just a ageneral decreased interest in going out...the claimant's husband...indidcated that the claiamnt's alcohol abuse has driven away her friends, but that otherwise her social functioning is intact...[r]eporting from the claimant's extended family and friends...suggests significantly retained social function, much greater than the claimant reported, as these third parties reported frequent, if not daily, social interaction with the claiamtn both in her home and in church....the claimant typically presents upon objective mental status examination, when not inebriated or in acute crisis, as pleasant, cooperate, polite, alert and fully oriented with appropraite and goal directed speech and good eye contact...appropriate dress and hygiene, organized and eye coherent thought process...

(Tr. 21). In *Jones,* the Third Circuit found that the ALJ's explanation was adequate where the ALJ "considered the appropriate factors in reaching the conclusion… [and]  discusses the evidence pertaining to" the impairments. *Jones,* 364 F.3d at 505. Here, the ALJ cited to the subjective and objective factors relevant to Plaintiff's ability to interact with the public, and determined that she was only minimally limited in social functioning. This explanation allows meaningful judicial review.

Plaintiff does not substantively challenge the ALJ's finding or cite any medical evidence supporting a limitation in social functioning that the ALJ did not

properly acknowledge, address, and reject. Plaintiff asserts only that Plaintiff's GAF scores of 45 to 55 in September and October of 2012 and her testimony that she needed help when dealing with the public at her past job support this claim. (Pl. Brief at 13). However, the ALJ directly addressed the GAF scores, writing that "GAF scores are subjective and are only representative of the claimant's symptoms or functioning on the day assessed…[and] these scores demonstrate no more than moderate symptoms or functional deficits when not in a period of acute crisis." (Tr. 27). With regard to Plaintiff's subjective testimony about her ability to interact with the public, the ALJ found that Plaintiff was not credible, and Plaintiff has not challenged the ALJ's credibility assessment.  (Tr. 30). Consequently, substantial evidence supports the ALJ's finding that Plaintiff was not moderately limited in her ability to interact with the public.

### B. The ALJ's development of the record and medical source opinions

Plaintiff asserts that the ALJ failed to adequately develop the record because the ALJ did not obtain a missing page from Dr. D'Eramo's opinion and discounted his opinion based on a lack of objective findings when the page that was missing may have contained missing findings. (Pl. Brief at 14-16).

An ALJ must develop the record. *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). However, even if

the ALJ errs in developing the factual record, the Plaintiff must show clear evidence of prejudice from this error:

> The fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand. However, if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal.

*Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (internal citations omitted). "The question is not 'whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.' " *Jozefick v. Shalala,* 854 F.Supp. 342, 344 (M.D.Pa.1994) (quoting *Edwards v. Sullivan,* 937 F.2d 580, 585-86 (11th Cir.1991)). As one Court in this District has explained:

> "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." <u>Kenyon v. Colvin</u>, 2013 U.S. Dist. LEXIS 175897, *13–14, 2013 WL 6628057 (M.D.Pa.2013). The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." <u>Money v. Barnhart,</u> 91 Fed. Appx. 210, 215 (3d Cir.2004). citing <u>Bowen v. Yuckert,</u> 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a).

*Martin v. Colvin*, 4:11-CV-02378, 2014 WL 1235664 (M.D. Pa. Mar. 25, 2014) (Nealon, J.).

In developing the record, the ALJ must address medical source opinions. The Third Circuit has repeatedly reiterated that an ALJ may assign greater weight to a non-examining opinion than an examining opinion as long as evidence is not rejected for "no reason or the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). Section 404.1527(c) establishes the factors to be considered by the ALJ when assigning weight to medical opinions. 20 C.F.R. §§404.1527(c)(1) and (2) codify the general preference for treating opinions over non-treating opinions and examining opinions over non-examining opinions.  20 C.F.R. §404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. 20 C.F.R. § 404.1527(c)(3) states that the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings" and the "better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §404.1527(c)(5) provides more weight to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

Here, Plaintiff has not shown that the ALJ's alleged failure to develop the record has prejudiced her. Plaintiff has not provided the missing page to the Court, or provided any explanation of how the missing page would support Plaintiff's claims. As a result, Plaintiff cannot demonstrate that this failure prejudiced Plaintiff or that the ALJ's error was not harmless. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *Jozefick v. Shalala,* 854 F.Supp. 342, 344 (M.D.Pa.1994).

Moreover, any error in failing to review Dr. D'Eramo's objective findings was harmless. The ALJ did not reject Dr. D'Eramo's opinion solely because it was not supported by objective findings. The ALJ also rejected Dr. D'Eramo's opinion because it conflicted with other evidence in the record that showed a lack of complaints and treatment for neck or back pain up to the date of his opinion. This is an accurate characterization, as the record shows that Plaintiff did not complain of back or neck pain to treating providers from 2007 until May of 2012, several months after Dr. D'Eramo's opinion. *Supra.* Even if the opinion had been well-supported by objective findings, the ALJ would still have been entitled to discount it based on Plaintiff's failure to seek any treatment for these alleged impairments in 2010 and 2011. The ALJ did not reject any of the treating opinions for "no reason or the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993).

Additionally, the ALJ assigned great weight to the state agency non-examining opinion. (Tr. 19). The non-examining physician was able to review the

entirety of Dr. D'Eramo's opinion, including the missing page. For instance, Dr. Brown's opinion noted that Dr. D'Eramo's examination revealed a normal abdomen and no focal or sensory deficits. These findings are not contained in pages one, two, three, or five. (Tr. 501-513). Thus, Dr. Brown reviewed all of Dr. D'Eramo's opinion, and concluded that it was inconsistent with the medical and other record evidence. Plaintiff urges the Court to reweigh Dr. D'Eramo's opinion, but the ALJ was entitled to rely on Dr. Brown's interpretation of Dr. Eramo's decision. A reasonable mind could accept this evidence as adequate to assign more weight to Dr. Brown than Dr. D'Eramo. The Court is bound by the reasonable conclusions of the ALJ under the deferential substantial evidence standard of review. The ALJ adequately developed the record and substantial evidence supports the ALJ's assignment of weight to the medical decisions.

### C. The ALJ's evaluation of Plaintiff's physical impairments

Plaintiff challenges the ALJ's findings relating to her cervical spine, lumbar spine, neck, and coccyx. (Pl. Brief at 17-18). Specifically, Plaintiff asserts that these impairments are severe and caused work-related functional limitations. (Pl. Brief at 17-18). Plaintiff cites to medical records from 1994, 2000, and 2007 demonstrating physical impairments. (Pl. Brief at 4) (citing Tr. 49, 365-69, 373, 379-81, 400, 403-04, 670-79, 891, 896-97). However, Plaintiff continued working through 2010 and cared for a disabled parent through December of 2009. (Tr. 273).

The record does not contain any evidence that Plaintiff sought treatment for back and neck pain at any time between June of 2007 and May of 2012. *Supra.* Thus, these records do not undermine the ALJ's finding that her relevant physical impairments did not cause work-related functional limitations prior to 2012.

The ALJ concluded that, while Plaintiff's physical impairments caused functional limitations once she fell in 2012, these impairments and limitations were not expected to last for twelve months or more, and were therefore not severe.  (Tr. 16-19). Plaintiff challenges this conclusion, arguing that Plaintiff's "lay statement that her treating specialist 'are expecting her to recover from the injury'" is insufficient to conclude that her cervical impairment would not be expected to last twelve months. (Pl. Brief at 17). Plaintiff notes that she "presented with increased cervical complaints a month after her fall," the "December 2012 cervical spine MRI showed her cervical fractures were persistent, chronic, and had not changed," and her "primary care provider included her cervical impairment as a basis for reporting she would be disabled until October 2013, more than 12 months after she fractured her cervical spine." (P. Brief at 17). Plaintiff further notes that "[n]o medical source reported [Plaintiff's] cervical spine fractures would not last at least twelve months or, if they healed, would not have caused residual [problems] that limited her more than minimally," explaining that "[t]he state agency consultant on

whole opinion the ALJ relied reviewed [Plaintiff's] case in July 2011, and could not have assessed the impact of her cervical fractures." (Pl. Brief at 18).

Plaintiff also asserts that Dr. Akpe's November 13, 2012 opinion supports her claim that her impairment would last twelve months or more because it "included her cervical impairment as a basis for reporting she would be disabled until October 2013, more than 12 months after she fractured her cervical spine." (Pl. Brief at 17). However, Plaintiff fails to mention that Dr. Akpe did not indicate that Plaintiff's disability started when she fell and fractured her spine in August of 2012. Instead, Dr. Akpe assessed temporary disability beginning in November of 2012 and extending for eleven months. Dr. Akpe specifically indicated that Plaintiff would not be disabled for twelve months or more or be a candidate for social security disability. Thus, this opinion undermines, rather than supports, Plaintiff's contention that her disability as a result of her cervical spine fracture would last for twelve months or more.

Plaintiff also cites to the December 6, 2012 MRI that indicated her cervical fracture had not changed. However, this MRI does not relate to her recovery after surgery, because her surgery was not scheduled until December 17, 2012. (Tr. 1021, 1015-26). Plaintiff does not cite any other evidence that her cervical spine impairment would last twelve months or more.

The ALJ relied on Plaintiff's report that her "treating specialists for [her] neck injury 'are expecting her to recover from the injury.'" (Tr. 19). The ALJ also cited to the medical records from those specialists. (Tr. 19). A reasonable mind could accept this evidence as adequate to conclude that her cervical impairment would not last for twelve months or more. *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also* 42 U.S.C. § 423(d)(1) ("The term "disability" means--(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (Duration requirement means that a claimant must have an "inability" to work for twelve months).

Under the deferential substantial evidence standard of review, the Court may not reweigh evidence, and is bound by the reasonable conclusions of the ALJ. *See Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder") (citing *Early v. Heckler,* 743 F.2d 1002, 1007 (3d Cir.1984)). Substantial evidence supports the ALJ's assessment of Plaintiff's physical impairments.

## D. Evidence that was not before the ALJ

When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Sentence Six requires a remand when evidence is "new" and "material," but only if the claimant demonstrated "good cause" for not having incorporated the evidence into the administrative record. *Id.* With regard to the good cause requirement, the Third Circuit in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001) explained:

> We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins*, 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Id.* at 595.

Here, Plaintiff produced various records to the Appeals Council that were not before the ALJ. (Tr. 1-6, 37, 1023-1084). Most of this evidence existed prior to the ALJ decision. (Tr. 1023-1081). The only evidence from after the ALJ decision was a discharge summary indicating that Plaintiff had been discharged from counseling for noncompliance. (Tr. 1082-84). This evidence is not material. With regard to the evidence that existed prior the ALJ's decision, Plaintiff has not asserted any good cause for failing to provide this evidence to the ALJ.  Thus, the Court did not review this evidence for the purposes of determining whether the ALJ's decision was supported by substantial evidence and does not recommend remand for consideration of this evidence.

## VII.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.     This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: March 12, 2015                         s/Gerald B. Cohn
                                            GERALD B. COHN
                                    UNITED STATES MAGISTRATE JUDGE